UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JUSTIN SHAWLER | CIVIL ACTION NO. 15-2599 |
| VERSUS | SECTION "I" |
| ERGON ASPHALT & EMULSIONS, INC., AND BIG VALLEY, L.L.C. | JUDGE LANCE M. AFRICK |
| | MAGISTRATE JUDGE ROBY |

**MEMORANDUM IN SUPPORT OF MOTION OF BIG VALLEY, L.L.C. TO COMPEL THE NEUROPSYCHOLOGICAL EVALUATION OF PLAINTIFF**

Defendant Big Valley, LLC ("Big Valley") hereby moves the Court to compel Plaintiff to undergo neuropsychological evaluation performed by Big Valley's expert neurologist. Undersigned counsel arranged for this evaluation to take place on January 11th and 12th, but Plaintiff has refused to attend.

**DEADLINES**

The urgency of this testing is based on the upcoming discovery deadline of January 21, 2016 and the expert report deadline of February 2, 2016.[1]

**BACKGROUND**

As the Court knows, this is a personal injury lawsuit stemming from a fall Plaintiff had while fishing on Big Valley's vessel. Included in Plaintiff's alleged damages are claims of "physical pain, mental anguish, and other medical problems." Rec. Doc. 1. Plaintiff intends to support these claims with medical records from Dr. Susan Borgaro. A review of Dr. Borgaro's records show that she conducted two days of neuropsychological testing on Plaintiff on August

---

[1] The expert report deadline was extended by agreement of counsel from January 21, 2016 to February 2, 2016.

11, 2015 and August 13, 2015.[2] This testing was used to produce raw data which was then interpreted to make specific diagnoses. Based on the data, Dr. Borgaro diagnosed Plaintiff with memory loss, concussion syndrome, severe levels of depression, anxiety, hypervigilance, unusual thought process, and somatic problems. Accordingly, she recommended psychiatric evaluation.[3]

At Plaintiff's deposition on December 3, 2015, Plaintiff testified "The psychological problems I've had have been terrible. I have been diagnosed with depression, PTSD. I have anxiety issues. Anger issues now. Everything that you could imagine coming along with the loss of the use of a limb, but that's -- I've been seeing her for it. My pain management doctor has recently recommended that I go to a psychologist as well to see if there's any medication that will help with my emotional…" He further testified that "Unfortunately as a result, you know, the PTSD and everything, I've kind of withdrawn from -- from all my friends." It was with this testimony that it became clear that a large portion of Plaintiff's damages claim will take the form as mental pain and suffering and depression. Once that became evident, Defendant began looking for someone to perform a neuropsychological evaluation of Mr. Shawler.

On January 4, 2016 Defendant requested Plaintiff's availability to undergo the same testing with Dr. Tresa R. Spenser, an independent neuropsychologist, in New Orleans.[4] No dates were ever provided. As such, January 11 and January 12 were chosen. These dates were chosen not only because of the looming discovery deadlines, but also because they were immediately before January 13, a date Defendant had offered to Plaintiff as one on which he could be seen by

---

[2] See Exhibit "A."

[3] *Id.*

[4] Email between counsel, attached as Exhibit "B."

{N3161096.1}

Defendant's expert vocational rehabilitation expert, Nancy Favaloro, also in New Orleans. Despite the fact that Plaintiff filed his lawsuit in the Eastern District of Louisiana, Defendant has gone above and beyond and has been willing to pay not only for Plaintiff's travel to and from examinations in this venue, but has paid for the travel of his ex-wife so that she can make his travel less burdensome on account of his injuries. The costs of these accommodations is significant. Accordingly, Big Valley has tried to arrange examinations on a series of dates in a row requiring less travel. For example, if Plaintiff had not refused to attend the neuropsychological evaluation, he could have flown to New Orleans on Sunday, attended three days of evaluations (two with Dr. Spencer and one with Nancy Favaloro, the vocational rehabilitation expert) and flown back Wednesday night. This would require only four total plane tickets, as opposed to eight if two separate trips are necessary. The attempt to line up three consecutive days is not only less expensive, it was intended to be more convenient for Plaintiff as well. Plus, it has to be completed now in order to meet the expert report deadline.

To date, Plaintiff has opposed <u>any</u> neuropsychological evaluation which lasts two days. As evidenced by Dr. Borgaro's testing, an evaluation of this kind requires testing which covers two days.

## LAW AND ANALYSIS

The authority to order a functional capacity examination of a plaintiff is set forth in Rule 35(a) of the Federal Rules of Civil Procedure, which provides in relevant part that:

> [w]hen the mental or physical condition (including the blood group) of a party or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties. It shall specify the time, place, manner, conditions and

>     scope of the examination and the person or persons by whom it is
>     to be made.

Fed. R. Civ. P. 35(a). This Court has recognized the test for determining whether an IME is appropriate is two-fold: "First, the physical or mental state of the party must be in controversy. Second, the moving party must show good cause as to why the motion should be granted." *Y&S Marine, Inc. v. Maza*, 2011 WL 4807706, at *2 (E.D. La. Oct. 11, 2011) (Knowles, J.) (citing *Schlagenhauf v. Holder*, 379 U.S. 104 (1964)). In general, courts construe Rule 35 liberally in allowing discovery. *Id.; see also Palumbo v. Sea Mar Mgmt., L.L.C*., 2007 U.S. Dist. LEXIS 72781, *3 (W.D. La. Sept. 28, 2007) (stating that "Rule 35(a) generally has been construed liberally in favor of granting discovery").

Here, there is no question that Plaintiff's physical state is in controversy. In Plaintiff's Complaint he alleges that he "sustained serious injuries to his face, shoulder, arm, and other parts of his body." Rec. Doc. 1, ¶ 6. Further, he alleges that "As a result of said occurrences, Plaintiff sustained severe injuries to his body, which resulted in physical pain, mental anguish, and other medical problems. Plaintiff has sustained severe pain, physical impairment, discomfort, mental anguish, and distress. In all reasonable probability, Plaintiff's physical pain, physical impairment and mental anguish will continue indefinitely." Rec. Doc. 1, ¶ 9.

Moreover, good cause exists for Plaintiff's neuropsychological evaluation. "Neuropsychological evaluation" is defined by Medscape, an internet website, as "a testing method through which a neuropsychologist can acquire data about a subject's cognitive, motor, behavioral, linguistic, and executive functioning."[5] Such testing is clearly relevant to Plaintiff's injuries as he has already authorized his own doctor, Dr. Borgaro, to conduct the same testing. Dr. Borgaro's testing took two days. Big Valley is entitled to verify Dr. Borgaro's substantial

---

[5] http://emedicine.medscape.com/article/317596-overview

diagnoses of memory loss, concussion syndrome, severe levels of depression, anxiety, hypervigilance, unusual thought process, and somatic problems by conducting its own independent testing.

Big Valley anticipates that Plaintiff will argue that additional testing is not necessary because the raw data Dr. Borgaro obtained can be produced and analyzed by Dr. Spencer. While Big Valley certainly wants to see and inspect Dr. Borgaro's raw data, this will not help Dr. Spencer maker her own diagnoses. Dr. Spencer has explained the data derived from these test is not objective as each doctor who performs the requested tests does so in his or her own (i.e. unique) manner. In other words, Dr. Spencer and Dr. Borgarao may get different results which would lead to different diagnoses, despite conducting the same test. Even if the results were the same, this data has to be interpreted, again leading to the possibility/probability that the diagnoses will differ.

Finally, because Plaintiff refused to attend the testing on January 11 and 12, despite being informed that these were the last dates available that would permit Defendant's expert report to be timely produced, Defendant has now been prejudiced as the next available testing dates of February 25 and 26 fall after the expert report deadline and only ten days before trial.

## CONCLUSION

As set forth above, Plaintiff should be compelled to appear for a neuropsychological evaluation in New Orleans within thirty days of this Court's ruling, assuming Dr. Spencer has availability.

Respectfully submitted,

*/s/ Stephen H. Clement*
JEFFERSON R. TILLERY (#17831)
C. BARRETT RICE (#30034)
STEPHEN H. CLEMENT (#34850)
Jones Walker LLP

{N3161096.1}

        201 St. Charles Ave., 47th Floor
        New Orleans, LA 70170-5100
        Telephone:   (504) 582-8000
        Facsimile:    (504) 589-8583
        E-Mail:       jtillery@joneswalker.com
                       brice@joneswalker.com
                       sclement@joneswalker.com

*Attorneys for Defendant, Big Valley, L.L.C.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been forwarded to all counsel of record by hand, fax, electronic filing, or by depositing same in the U.S. mail, postage prepaid and properly addressed this 8th day of January, 2016.

                /s/ Stephen H. Clement

{N3161096.1}