UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JUSTIN SHAWLER                                                     CIVIL ACTION

VERSUS                                                                  No. 15-2599

ERGON ASPHALT & EMULSIONS, INC.,                      SECTION I
AND BIG VALLEY, LLC

ORDER AND REASONS

Before the Court is a motion[1] filed by defendant, Big Valley, LLC, to exclude testimony of plaintiff's expert, Steven E. Caskey, pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert*.[2]  Plaintiff, Justin Shawler ("Shawler"), opposes[3] the motion.  For the following reasons, the motion is granted in part and deferred until trial in part.

BACKGROUND

For the purposes of deciding this motion, the facts are straightforward and undisputed. In May 2015, Shawler received an invitation from dismissed[4] defendant, Ergon Asphalt & Emulsions, Inc., to join a group of business partners for an offshore fishing trip near Venice, Louisiana on the M/V BIG VALLEY.[5]  On May 3, 2015, while the boat was returning to Venice, Shawler allegedly fell from the bridge deck to the lower cockpit deck and sustained multiple personal injuries.[6]  In his first amended complaint, plaintiff added Big Valley, LLC ("Big Valley")—owner of the M/V BIG VALLEY—as a defendant and requested damages which would compensate him for these alleged

---

[1] R. Doc. No. 43.
[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).
[3] R. Doc. No. 49.
[4] R. Doc. No. 17.
[5] R. Doc. No. 49-1, at 8.
[6] R. Doc. No. 49-1, at 8–9.

injuries.[7]   Big Valley is a subsidiary of Ergon, Inc., which is also the parent corporation of Ergon Asphalt & Emulsions, Inc. ("Ergon").[8]

In support of his claim, plaintiff retained Steven E. Caskey ("Caskey") to provide expert testimony on general standards for maritime oversight and inspections, vessel operations and safety, and maritime casualty investigations.[9]   In his expert report, Caskey explains the regulatory statutes and safety standards he contends applied to the M/V BIG VALLEY at the time of the accident, and he summarizes the events allegedly leading to Shawler's injuries.[10]   Caskey's report also offers his expert opinion that the vessel was unseaworthy, that Big Valley was negligent, negligent *per se*, and grossly negligent, and that this negligence was the direct and proximate cause of Shawler's injuries.[11]

Big Valley argues that Caskey's testimony should be excluded because he offers improper legal conclusions and, even if such opinions were proper, Caskey is not qualified to testify as to those conclusions.[12]   Big Valley further asserts that without its impermissible legal conclusions, Caskey's report is merely "a slanted summary of the facts of the case" which will not help the jury and which should, therefore, be excluded altogether.[13]   In response, plaintiff argues that Caskey's opinions are not impermissible legal conclusions and that his testimony should be admitted pursuant to both Rule 702 and *Daubert*.[14]

---

[7] R. Doc. No. 9, at 1.
[8] R. Doc. No. 66-1, at 7.
[9] R. Doc. No. 49, at 2.
[10] R. Doc. No. 49-1, at 6.
[11] R. Doc. No. 49-1, at 11, 13.
[12] R. Doc. No. 43, at 1.
[13] R. Doc. No. 43-1, at 7.
[14] R. Doc. No. 49, at 1.

## LAW AND ANALYSIS

**I.     Rule 702 and *Daubert* Standards**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert witness testimony.  Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'"  *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)).  Additionally, Rule 702 explains an expert may be qualified based on "knowledge, skill, experience, training, or education."  *Hicks,* 389 F.3d at 524; *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (discussing witnesses whose expertise is based purely on experience).  "A district court should refuse to allow an expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject."  *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (quoting *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999)).  However, "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue.  Differences in expertise bear chiefly on the weight to be

assigned to the testimony by the trier of fact, not its admissibility." *Id.*; *see Daubert,* 509 U.S. at 596.

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment to "determine whether the expert testimony is both reliable and relevant." *Burleson v. Tex. Dep't of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire*, 526 U.S. at 147.

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'"). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.,* 320

F.3d 581, 584 (5th Cir. 2003).  "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."  *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702 advisory committee's note).

The Court finally notes that when expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony.  *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

## II.   Analysis

### a.  Caskey may be qualified as an expert

As an initial matter, the Court finds that plaintiff has shown that Caskey has sufficient knowledge, training, and skill to offer his expert opinions on maritime regulations and safety standards.[15]  Caskey served in the United States Coast Guard for twenty-two years and he has more than ten years of experience in the vessel inspection and certification industry.[16]  Any questions as to the strength of Caskey's qualifications go to the weight of his testimony rather than its admissibility.

However, Caskey's status as an expert in the proffered fields does not automatically render the opinions in his report admissible.  To the contrary, for the reasons set forth below, the Court concludes that practically all of the opinions Caskey offers in his report should be excluded.

---

[15] R. Doc. No. 43-4, at 16–17.
[16] R. Doc. No. 43-4, at 16–17.

### b. Caskey's opinions regarding which Coast Guard Regulations apply to the M/V BIG VALLEY are inadmissible

Caskey offers opinions regarding alleged regulatory violations by Big Valley.  He opines that the "M/V BIG VALLEY is subject to the regulatory requirements of commercial passenger vessels and examinations by the US Coast Guard" and that "the M/V BIG VALLEY was operating illegally as an Un-Inspected passenger vessel," or "UPV," at the time of the accident.[17]  These observations lead Caskey to make several "findings" with respect to the accident.  He finds, for example, that a "major contributing factor[] as to the root cause of the casualty" was that "[t]he companies' and master of the vessel knowingly continued operated [sic] in a commercial capacity without meeting the required Federal Regulations for a Certified Small Passenger Vessel."[18]  He also finds that "[t]he operating conditions onboard the vessel even as a UPV were substandard and outside of Coast Guard regulatory guidelines."[19]

Big Valley argues that "the facts do not bear out Mr. Caskey's assertion that the M/V BIG VALLEY should not have been classified as an 'uninspected passenger vessel' and, consequently, the regulations upon which Mr. Caskey relies are inapplicable."[20]  Big Valley explains that these regulations do not apply because the M/V BIG VALLEY "is [a] non-commercial vessel that was not carrying any passengers for hire."[21]  As evidenced by the vessel's Certificate of Documentation, Big Valley contends that the purpose of the vessel was "recreation."[22]

Expert testimony must be relevant to be admissible.  Relevance includes not only the general requirement contained in Rule 401 that the testimony tends to make the existence of any fact of

---

[17] R. Doc. No. 43-4, at 8.
[18] R. Doc. No. 43-4, at 14.
[19] R. Doc. No. 43-4, at 14.
[20] R. Doc. No. 43-1, at 7.
[21] R. Doc. No. 43-1, at 1–2.
[22] R. Doc. No. 43-1, at 2; R. Doc. No. 43-5.

6

consequence more probable or less probable, but also the prerequisite that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 401, 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful.").

Testimony regarding applicable regulatory and safety standards within the maritime industry is potentially relevant to the issue of negligence and should be admitted.  *See Melerine v. Avondale Shipyards, Inc.*, 659 F .2d 706, 713 n. 22 (5th Cir. 1981) ("[P]laintiff may properly offer a statute or regulation as evidence of a defendant's negligence even when that statute or regulation cannot be used to establish negligence per se."); *Francois v. Diamond Offshore Co.*, No. 11-2956, 2013 WL 654635, at *4 (E.D. La. Feb. 21, 2013) (Morgan, J.) ("In order for expert testimony regarding alleged regulatory violations to be admissible in this case, [the expert] must testify about alleged violations of U.S. Coast Guard regulations, not OSHA regulations[, which are not applicable to the vessel]."); *Robertson v. Cal Dive Int'l, Inc.*, No. 05-807, 2006 WL 1968917, at *4 (E.D. La. July 12, 2006) (Engelhardt, J.) (excluding evidence of Coast Guard regulations that the Court concluded did not apply to the defendant's vessel).

However, which rules or regulations apply is a legal issue to be decided by the Court.  Expert testimony purporting to establish which rules or regulations actually applied to the incident in this case is inappropriate. *See generally Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997) ("There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.") (quotation omitted); *In re Actos*, No. 11-2299, 2014 WL 120973, at *11 (W.D. La. Jan 10, 2014) ("There is no question this Court will not allow Dr. Kessler—or any expert or attorney—to instruct the jury as to what the applicable law in this case is.") (Doherty, J.) (emphasis omitted).  Accordingly, Caskey may not determine whether or not a particular Coast Guard regulation applied with the force of law to the M/V BIG VALLEY; such a determination is

the role of the Court.  Once the Court has determined that a particular regulation is applicable, however, Caskey may be permitted to testify as to the requirements of that regulation.

The applicability of the regulations cited by Caskey has been challenged by Big Valley.  The Court must therefore determine as a matter of law which regulations applied to the M/V BIG VALLEY at the time of accident.  Because this issue was not fully addressed by the parties in their initial briefs, the Court ordered[23] additional briefing which the parties have supplied.[24]  On the basis of that briefing, as well as its own review of the applicable law, the Court holds that the M/V BIG VALLEY was operating as neither a "small passenger vessel" nor as a "recreational vessel" at the time of the accident, but rather should be categorized as an "uninspected vessel."[25]

### i. The three potential vessel categories

Congress has provided the Coast Guard with the authority to promulgate and enforce regulations promoting the safety of vessels "on and under the high seas and waters subject to the jurisdiction of the United States."  14 U.S.C. § 2.  In defining the Coast Guard's regulatory authority, Congress has divided the universe of vessels into several broad classes.  *See Chao v. Mallard Bay Drilling, Inc.*, 534 U.S. 235 (2002) (explaining that the Coast Guard's authority to regulate a vessel turns in part on that vessel's class).  The three potentially applicable classes in this case are "inspected vessels," "uninspected vessels," and "recreational vessels."

In 46 U.S.C. § 3301, Congress lists fifteen types of "inspected vessels."  One of these fifteen types is the "small passenger vessel," which is the category plaintiff alleges encompasses the M/V BIG VALLEY.  *See* 46 U.S.C. § 3301(8).  These "inspected vessels" are "subject to inspection" by

---

[23] R. Doc. No. 64.
[24] *See* R. Doc. Nos. 65, 66.
[25] The Court can decide this issue unless the outcome turns on a fact question that is disputed by the parties, in which case the fact must be decided by a jury.  Because the question of which regulation applies does not turn on a disputed fact issue, the Court is able to conclude that the M/V BIG VALLEY was operating as an "uninspected vessel."

the Coast Guard pursuant to a substantial body of rules mandated by Congress. *See* 46 U.S.C. § 3301–3318. This is the most heavily regulated of the three potentially applicable vessel classes, with regulations addressing, for example, the occupational health and safety of seamen. *Chao*, 534 U.S. at 243.

"Uninspected vessels," in contrast, are identified by 46 U.S.C. § 2101(43). That statute defines an "uninspected vessel" as "a vessel not subject to inspection under section 3301 of this title that is not a recreational vessel." 46 U.S.C. § 2101(43). With respect to this category of vessels, the Coast Guard largely regulates matters related to marine safety, such as fire extinguishers, life preservers, engine flame arrestors, engine ventilation, and emergency locating equipment. *See Chao*, 534 U.S. at 243–44 (citing 46 U.S.C. § 4102 (1994 ed. and Supp. V); 46 CFR pts. 24-26 (2000)). As the term "uninspected" implies, unlike vessels which are "subject to inspection," there are no statutory provisions for regular, periodic examinations of uninspected vessels so as to ensure compliance with the Coast Guard's safety equipment requirements. *See* 46 U.S.C. §§ 3305, 3306, 4106. In other words, the regulations applicable to "uninspected vessels" are less onerous than those that regulate "inspected vessels." No party argues in its supplemental briefing that the M/V BIG VALLEY is properly categorized as an "uninspected vessel."

Big Valley instead argues that M/V BIG VALLEY is correctly classified as a "recreational vessel."[26] A "recreational vessel" is defined by 46 U.S.C. § 2101(25) as "a vessel (A) being manufactured or operated primarily for pleasure; or (B) leased, rented, or chartered to another for the latter's pleasure." Like "uninspected vessels," "recreational vessels" are subject to less stringent regulation by the Coast Guard than the "inspected vessel" class.

---

[26] R. Doc. No. 66, at 2.

### ii. The M/V BIG VALLEY is neither a "small passenger vessel" nor a "recreational vessel"; it is an "uninspected vessel"

#### 1. The M/V BIG VALLEY is not a "small passenger vessel"

Plaintiff and Caskey contend that the M/V BIG VALLEY is an "inspected vessel" because it falls under the category of "small passenger vessels." 46 U.S.C. § 3301(8).[27] 46 U.S.C. § 2101(35) defines "small passenger vessel" as follows:

> (35) "small passenger vessel" means a wing-in-ground craft, regardless of tonnage, carrying at least one passenger for hire, and a vessel of less than 100 gross tons as measured under section 14502 of this title, or an alternate tonnage measured under section 14302 of this title as prescribed by the Secretary under section 14104 of this title—
>
> (A) carrying more than 6 passengers, including at least one passenger for hire;
>
> (B) that is chartered with the crew provided or specified by the owner or the owner's representative and carrying more than 6 passengers;
>
> (C) that is chartered with no crew provided or specified by the owner or the owner's representative and carrying more than 12 passengers;
>
> (D) that is a submersible vessel carrying at least one passenger for hire; or
>
> (E) that is a ferry carrying more than 6 passengers.

No party argues that the M/V BIG VALLEY is a "wing-in-ground craft, regardless of tonnage, carrying at least one passenger for hire."[28] No party argues—nor could they—that subsection (C), (B), (D), or (E) applies to the facts of this case.[29] The applicability of § 2101(35)

---

[27] R. Doc. No. 43-4, at 14; R. Doc. No. 65, at 1.

[28] 46 U.S.C. § 2101(48) defines "wing-in-ground craft" as "a vessel that is capable of operating completely above the surface of the water on a dynamic air cushion created by aerodynamic lift due to the ground effect between the vessel and the water's surface." This clearly does not encompass the M/V BIG VALLEY, a traditional vessel that floats on the water's surface itself, not on an air cushion above the surface of the water.

[29] It is worth noting that the reason subsection (B) does not apply to the facts of this case is because the M/V BIG VALLEY was not "chartered" by plaintiff's employer, Ergon. As Big Valley explains in its supplemental brief, Ergon, Inc. is the corporate parent of Big Valley and Ergon, and it maintains the vessel so that it may be used by its corporate subsidiaries. *See* R. Doc. No. 66, at 1-2.

therefore turns on whether subsection (A) applies. That subsection only applies to a vessel weighing less than 100 gross tons. No party argues that the M/V BIG VALLEY's weight exceeds 100 tons, and indeed the vessel's Certificate of Documentation lists its gross tonnage at 81 gross tons.[30] Accordingly, this prerequisite to the application of subsection (A) is met.

Subsection (A), however, only encompasses vessels "carrying more than 6 passengers, *including at least one passenger for hire*." 46 U.S.C. § 2101(35)(A) (emphasis added). Big Valley argues that the M/V BIG VALLEY is not a "small passenger vessel" because it "was not carrying any passengers for hire" at the time of the accident. The parties do not dispute that there were fourteen persons on board the M/V BIG VALLEY at the time of the accident: a captain and two crew members, five employees of Ergon, and six clients of Ergon (including plaintiff).[31]

After considering the undisputed facts and the available law on this issue, the Court concludes that the M/V BIG VALLEY cannot satisfy the requirements of subsection (A) because the vessel was not carrying "at least one passenger for hire" during the fishing trip. The statute defines "passenger for hire" as follows:

(21a) "passenger for hire" means a passenger for whom *consideration is contributed as a condition of carriage on the vessel*, whether directly or indirectly flowing to the owner, charterer, operator, agent, or any other person having an interest in the vessel.

46 U.S.C. § 2101(21a) (emphasis added).[32] The term "consideration," in turn, is defined as "an economic benefit, inducement, right, or profit including pecuniary payment accruing to an

---

[30] R. Doc. No. 43-5, at 1.

[31] R. Doc. No. 43-4, at 6.

[32] The captain and crew are not considered "passengers" under the statute. 46 U.S.C. § 2101(21) provides that "passenger" means:

[A]n individual carried on the vessel except—

(i) the owner or an individual representative of the owner or, in the case of a vessel under charter, an individual charterer or individual representative of the charterer;

individual, person, or entity, but not including a voluntary sharing of the actual expenses of the voyage, by monetary contribution or donation of fuel, food, beverage, or other supplies."[33]  46 U.S.C. § 2101(5a).

No one disputes that Ergon invited several of its own employees and several of its clients to join the fishing trip as a form of employee and customer appreciation.  Big Valley does argue, however, that inviting employees and clients on a fishing trip as a form of appreciation does not mean that Big Valley intended the fishing trip to serve as a sort of "bonus" for those employees or that Big Valley expected "future business" from its clients in return for the trip.[34]

From a practical perspective, Big Valley's argument that the fishing trip did not serve a "business function" is without substance.  It is beyond dispute that companies invite employees and clients on fishing trips—or engage in other types of employee or client appreciation—for business reasons.  Plaintiff is convincing when he argues that the "purpose of the voyage is an 'inducement' for Ergon's business partners to continue doing business with Ergon (i.e. 'wining and dining') and

---

(ii) the master; or

(iii) a member of the crew engaged in the business of the vessel who has not contributed consideration for carriage and who is paid for on board services;

No party argues that the captain or crew should be considered "passengers" under this definition.  Accordingly, when conducting an inquiry into whether at least one passenger contributed consideration as a condition of carriage on the M/V BIG VALLEY, the Court ignores the captain and crew and looks only to the remaining passengers.

[33] The parties dispute whether the fact that Ergon reimbursed Big Valley for any expenses incurred on the fishing trip, including the cost of the crew's wages, means that Ergon contributed "consideration . . . as a condition of carriage on the vessel."  *See* R. Doc. No. 65, at 2; R. Doc. No. 66, at 6.  The Court agrees with Big Valley that this form of reimbursement is explicitly excluded from the definition of "consideration" under the statute.  *See* 46 U.S.C. § 2101(5a) (consideration does not include "a voluntary sharing of the actual expenses of the voyage, by monetary contribution or donation of fuel, food, beverage, or other supplies").  Big Valley's receipt of money from Ergon covering only the "actual expenses of the voyage" did not constitute consideration.

[34] R. Doc. No. 66, at 3-4.

rewarding Ergon employees with a non-monetary bonus for their job performance."[35]  This is true even if no "business" is discussed during the trip, as Big Valley claims no such discussions occurred.[36]

The fact that the fishing trip served a business function, however, does not mean that the M/V BIG VALLEY was necessarily a "small passenger vessel."  The parties argue the "business" versus "recreational" issue in connection with their arguments regarding "inspected vessel" status. While the primary use of the vessel determines whether the M/V BIG VALLEY is a "recreational vessel" or an "uninspected vessel," "small passenger vessel" status is determined by asking if any passenger, whether directly or indirectly, contributed consideration as a condition of his or her carriage on the vessel.  *See* 46 U.S.C. § 2101(21a).  The answer to that question on the undisputed facts of this case must be no.

Indeed, Ergon's mere hope that the fishing trip would engender good will and generate further business with its clients in no way indicates that the clients were somehow obligated to provide further business as consideration for the trip.  Similarly, Ergon's decision to reward certain employees with a fishing trip did not obligate those employees to provide Ergon with anything in return.

---

[35] R. Doc. No. 65, at 2-3.

[36] As Big Valley's corporate representative testified at his deposition when asked if the vessel had a "business function":

> Q. I mean certainly there's a business function to that boat.  I mean it's business development, right? . . .
>
> A. I think there's entertainment of customers.  There's no business being done on the boat to my knowledge, but it's customer entertainment, relationship building, that type of thing.

R. Doc. No. 66-1, at 7.

When distinguishing seamen from passengers in the context of a Jones Act claim, this Court has observed that "[a] passenger has been traditionally defined as 'one who travels in a public conveyance by virtue of a contract with the carrier, express or implied, paying fare or something accepted as an equivalent therefor.'" *Anderson v. Cunard Line Ltd.*, No. 95-249, 1995 WL 144576, at *3 (E.D. La. Mar. 31, 1995) (Vance, J.) (citation omitted).  The undisputed facts indicate that the fishing trip aboard the M/V BIG VALLEY was a gratuitous voyage; there was no monetary fare or accepted equivalent offered for passage.  There was no "contract with the carrier."  The Court cannot agree with Shawler that he was required to contribute consideration "as a condition of carriage on" the M/V BIG VALLEY.  *See* 46 U.S.C. § 2101(21a).  Because the Court concludes that there was no "passenger for hire" aboard the M/V BIG VALLEY, the vessel is not subject to Coast Guard regulations applicable to "inspected vessels" and Caskey cannot testify regarding those regulations.

### 2.  The M/V BIG VALLEY is an "uninspected vessel" and not a "recreational vessel"

Having concluded that the M/V BIG VALLEY is not a "small passenger vessel," the remaining issue for the Court to determine is whether the vessel is properly considered an "uninspected vessel" or a "recreational vessel."  As previously explained, an "uninspected vessel" is "a vessel [that is not an 'inspected vessel' and] that is not a recreational vessel."  46 U.S.C. § 2101(43).  A "recreational vessel," in turn, is "a vessel (A) being manufactured or operated primarily for pleasure; or (B) leased, rented, or chartered to another for the latter's pleasure."  46 U.S.C. § 2101(25).  "Pleasure" is undefined.

The fact that none of Ergon's employees or clients provided "consideration" in exchange for their invitations on the fishing trip does not mean that the primary purpose of the trip was "for pleasure."  Indeed, as the Court explained above, there is undoubtedly a business purpose behind business development and employee appreciation outings such as the fishing trip aboard the M/V

14

BIG VALLEY.  The question is whether a corporate-owned vessel that a company uses to entertain employees and clients should be considered a vessel that is "operated primarily for pleasure."  *See* 46 U.S.C. § 2101(25).

The Court can locate no cases addressing this issue.  However, Big Valley's supplemental brief cites the Coast Guard's Marine Safety Manual as addressing these circumstances.[37]  *See* U.S. Coast Guard Marine Safety Manual, COMDTINST M16000.7B ("Manual"), Vol. II (Material Inspection) at Section B, Ch. 4 at B4-2.  Under the "Small Passenger Vessels" section, the Manual states:

> There have been inquiries concerning application of the passenger vessel laws to vessels which are owned by a corporation, specifically in reference to the exemption in 46 U.S.C. 2101(25) [the exception for "recreational vessels"] and whether corporate owned vessels could ever be used only for pleasure.  Each investigation into possible illegal passenger vessel operations must be evaluated based on the facts of that specific case.  There are many corporate owned, documented vessels with pleasure as the only endorsement.  Some of these vessels may be operating illegally by carrying passengers; however, most are undoubtedly legitimate, corporate-owned, pleasure vessels.
>
> Corporate ownership alone does not prove that a vessel is a small passenger vessel.  If business was not conducted during the voyage (i.e. carrying company employees as a morale incentive or bonus for performance) and no expectation of future business was anticipated (good will) from the voyage, the vessel should be considered as being operated for pleasure, and not as a small passenger vessel.

*Id.*

The second paragraph is the paragraph which most directly engages the circumstances before the Court.  Unfortunately, the examples it provides within the parentheticals are ambiguous: it is unclear whether they exemplify conduct that should be considered "business" or conduct that should be considered "pleasure."  But if the parentheticals are eliminated from the sentence, then it becomes probable that the Coast Guard considers vessels like the M/V BIG VALLEY to be non-recreational.

---

[37] R. Doc. No. 43-4, at 8; R. Doc. No. 66, at 3.

Without parentheticals, the Manual states that "[i]f business was not conducted on the voyage . . . and no expectation of future business was anticipated . . . from the voyage, the vessel should be considered as being operated for pleasure[.]"  This assertion supports the view that when clients are invited aboard the vessel—which is done in the hope of generating future business or good will—the vessel ceases to be "operated for pleasure," and so it cannot be considered "recreational."

Under this approach, there is a difference between companies inviting their own employees aboard a vessel and companies inviting clients aboard a vessel.  Drawing such a distinction is consistent with the first paragraph of the Manual.  That paragraph provides that most of the corporate-owned vessels which are only registered as recreational "are undoubtedly legitimate, corporate-owned, pleasure vessels."  It is difficult to imagine a corporate-owned vessel that is not used for the entertainment of the company's own employees, whether clients are also present or not. It follows that if the entertainment of employees were considered "business," then it would be impossible for most of the "many corporate-owned" vessels to be properly endorsed solely for pleasure.  The distinction between corporate-owned vessels used for business and those used for pleasure, within the meaning of the statute, must therefore turn on whether the vessel is primarily used to entertain employees or to entertain other people; namely, clients.

Because in this case the M/V BIG VALLEY was being used to host clients as well as employees, and because Big Valley's corporate representative testified at his deposition that it is regularly used for this purpose, it follows that the M/V BIG VALLEY was not a "recreational vessel."  She was instead an "uninspected vessel."[38]

_____

[38] Plaintiff's brief and Caskey's report also use the term "uninspected passenger vessel."  *See* R. Doc. No. 49-4, at 9; R. Doc. No. 65, at 1.  "Uninspected passenger vessels," defined at 46 U.S.C. § 2101(42), are a special category of uninspected vessels that is largely subject to the same regulatory requirements as "recreational vessels."  46 U.S.C. § 4105(a).  The Court finds, however, that the "uninspected passenger vessel" category is not applicable to the M/V BIG VALLEY.  An

As the Court holds as a matter of law that the M/V BIG VALLEY is neither an "inspected vessel" nor a "recreational vessel" under the Coast Guard regulations, neither Caskey nor any other expert will be permitted to testify regarding the rules pertinent to those vessel categories. Because he is qualified as an expert, however, Caskey may testify as to the requirements of the regulations applicable to "uninspected vessels"—assuming a proper foundation for those opinions is provided at trial and that his opinions are otherwise admissible.[39]

### c. Caskey's opinions offering legal conclusions are inadmissible, including those regarding the M/V BIG VALLEY's unseaworthiness, the defendant's negligence, and causation

Caskey's opinions regarding the vessel's unseaworthiness, the defendant's purported negligent conduct, and the factual and proximate causes of Shawler's alleged injury all cross into the realm of legal conclusions which are reserved for the trier of fact.[40] *See In re Midland*

---

"uninspected passenger vessel," in the case of a vessel weighing less than 100 gross tons, must be a vessel:

> (i) carrying not more than 6 passengers, including at least one passenger for hire; or

> (ii) that is chartered with the crew provided or specified by the owner or the owner's representative and carrying not more than 6 passengers.

46 U.S.C. § 2101(42)(B). For the reasons already provided, the M/V BIG VALLEY was not carrying any passengers for hire and was not a chartered vessel, being ultimately owned by Ergon. It therefore does not meet the requirements for an "uninspected passenger vessel."

[39] The Court does not at this time decide whether the Coast Guard regulations applicable to "uninspected vessels" are relevant to determining Big Valley's liability under the facts of this case. Furthermore, assuming certain regulations do bear on the issue of liability, the Court does not decide whether expert opinions that Big Valley did or did not comply with those regulations should be admitted. *See Howard v. Cal Dive Int'l, Inc.*, No. 09-6265, 2011 WL 63873, at *4 (E.D. La. Jan. 6, 2011) (Zainey, J.) (noting that "several courts [in the Eastern District of Louisiana] have precluded safety experts from testifying about safety procedures on vessels when a jury is capable of understanding the relevant safety policies and regulations" and that "no expertise is required to assess the safety conditions on a vessel during a routine slip and fall accident"). The Court leaves those determinations until the relevant regulations—if any—are identified and such issues are raised by appropriate motion.

[40] R. Doc. No. 43-4, at 11–13.

*Enterprises, Inc.*, No. 00-3750, 2002 WL 31780156, at *3 (E.D. La. Dec. 11, 2002) (Africk, J.) ("Finally, the Court notes that Cole's proposed testimony that Orsouth and Midland violated OSHA regulations and that such violations constitute unseaworthiness and negligence are impermissible legal conclusions.").

Rule 704(a) provides: "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." However, Fifth Circuit case law is clear that Rule 704(a) "does not allow a witness to give legal conclusions." *U.S. v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) (citing *United States v. Isydore*, 167 F.3d 213, 218 (5th Cir. 1999)). Expert testimony that offers a legal opinion is inadmissible. *Estate of Sowell v. United States of America*, 198 F.3d 169, 171 (5th Cir. 1999); *Askanase v. Fatjo*, 130 F.3d 657, 669 (5th Cir. 1997).[41] Caskey's opinions on these issues are therefore excluded.

### d. Caskey's remaining opinions are also inadmissible

Moreover, "expert testimony on matters which a jury is capable of understanding and deciding without an expert's help should be excluded." *Jarrow v. Cupit*, No. 99-3539, 2000 WL 1537989, at *2 (E.D. La. Oct. 17, 2000) (Barbier, J.). The Court is confident that a jury is capable

---

[41] In a jury trial, the Fifth Circuit has stated that allowing such testimony has been found to be not only unhelpful, but also harmful, because:

> [T]he jury would be very susceptible to adopting the expert's conclusion rather making its own decision. There is a certain mystique about the word "expert" and once the jury hears of the [expert]'s experience and expertise, it might think the witness even more reliable than the judge. *Id.* [. . . I]f an expert witness were allowed to testify to legal questions, each party would find an expert who would state the law in the light most favorable to its position. Such differing opinions as to what the law is would only confuse the jury.

*Askanase*, 130 F.3d at 673 (adopting the reasoning of the Tenth Circuit in *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988)).

of determining whether Big Valley was negligent and, if so, whether that negligence proximately caused Shawler's alleged injuries.[42]  The Fifth Circuit has explained that "[t]here is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute."  *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quotation omitted).  The answer to that simple query warrants exclusion of a large segment of Caskey's proposed testimony.

Much of Caskey's report reads more like proposed findings of fact favorable to Shawler than an expert's reliable application of specialized knowledge to the facts of the case.  Indeed, after subjecting Caskey's report to *Daubert* analysis, the Court is left with the impression that his report is replete with the opinions of a "hired gun," i.e. someone more interested in results than in methodology.  Caskey cherry-picks evidence favorable to Shawler and dictates what inferences and legal conclusions the Court should draw from that evidence.[43]  Even with respect to Caskey's opinions that do not improperly state legal conclusions, the Court is extremely dubious that such testimony would be useful to the trier of fact.

---

[42] Shawler's amended complaint also alleges that the M/V BIG VALLEY was unseaworthy, R. Doc. No. 9 ¶ 9, and Caskey opines on this issue more than once in his report.  R. Doc. No. 43-4, at 8, 14, 15.  While this opinion is a legal conclusion and therefore not admissible on that basis alone, Caskey's opinion on the seaworthiness of the vessel is also inadmissible because it is not relevant.  As Shawler concedes in his opposition to Big Valley's motion, he "is not making a claim of unseaworthiness in this action."  *See* R. Doc. No. 49, at 6 n.1.  Accordingly, Caskey's opinion on this issue is excluded not only because it is an improper legal conclusion but also because it is not relevant to Shawler's claims.  The fact that Caskey would even render an opinion as to the unseaworthiness of the vessel, seaworthiness of the vessel not being an issue in this case, goes to the cookie cutter approach which permeates his opinions.

[43] Caskey also attempts to lecture the Court on the legal definition of the term "seaworthiness."  R. Doc. No. 43-4, at 8.  The Court simply notes that it does not require such a lesson, especially in a case in which, by plaintiff's own admission, the seaworthiness of the vessel is not at issue.

For example, Caskey's "finding" that "[t]he Captain was drinking while operating the vessel" and that this was a "major contributing factor" to the accident is not the sort of conclusion a layperson is unable to draw on his or her own.[44]  Indeed, the negative effects of alcohol consumption on a person operating a motorized vehicle are common knowledge.  The Court is similarly skeptical of Caskey's opinions that Shawler should have been warned of the dangers associated with ascending or descending the upper deck or tower while the vessel was moving,[45] and that a properly trained crew would have had better "situational awareness of what the passengers were doing."[46]

The Fifth Circuit has expressly recognized that expert testimony should be excluded if the court finds that "the jury could adeptly assess [the] situation using only their common experience and knowledge."  *Peters v. Five Star Marine Service*, 898 F.2d 448, 450 (5th Cir. 1990).  Whether the crew of the M/V BIG VALLEY should have paid closer attention to Shawler, whether the captain's drinking contributed to the accident, and whether Shawler should have been warned of the dangers of climbing a tower while the vessel was in motion are all issues on which expert testimony is unhelpful.  Caskey's reliance on safety regulations to render opinions on these subjects does not change that result.  These opinions are excluded.

As Big Valley argues, Caskey provides practically no methodology for his opinions regarding the crew's inadequate safety training.  While "[o]ne would expect that [an] expert would have set forth how [the members of the crew] were trained and then discuss how that deviated from industry training standards," Caskey's report simply offers his conclusory opinion that company personnel, vessel operators, and crew members were "improperly trained" and were therefore negligent.[47]  A court must make an assessment of whether the reasoning or methodology underlying

---

[44] *See* R. Doc. No. 43-4, at 14.
[45] *See* R. Doc. No. 43-4, at 14.
[46] *See* R. Doc. No. 43-4, at 14.
[47] R. Doc. No. 56, at 2.

an expert's testimony is valid before permitting his testimony.  *Wells v. SmithKline Beecham Corp.*, 601 F.3d 375, 378 (5th Cir. 2010).  An expert may not simply restate certain evidence and then offer an expert opinion "without any insight into the expert's own analysis or bases for his opinion." *RSUI Indem. Co. v. Am. States Ins. Co.*, No. 12-2820, 2015 WL 2372313, at *6 (E.D. La. May 18, 2015) (Africk, J.) (internal quotation and citation omitted).

Caskey's report is devoid of reasoning that supports his opinions regarding the crew's training and the Court is consequently unable conclude that Caskey's opinions are reliable.  As the burden of proof rests with the party seeking to present the expert testimony, Shawler fails to carry his burden with respect to reliability.  *Moore v. Ashland Chemical, Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).  At this stage of the proceedings and without more, Caskey's opinions addressing the training of the crew are excluded as proper reasoning and methodology supporting Caskey's opinions are absent.[48]

### e.  Caskey's opinions in the aforementioned areas are also excluded under Rule 403.

Finally, the Court notes that even if an expert's testimony survives the threshold scrutiny under Rule 702, it is subject to further review under Rule 403.  *See Daubert*, 509 U.S. at 595; *Brock v. Caterpillar, Inc.*, 94 F.3d 220, 226 (6th Cir. 1996).  "[E]xpert evidence can be both powerful and quite misleading . . . [Rule] 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595.  To this end, an expert opinion's "lack of reliable support may render it more prejudicial than probative, making it inadmissible under [Rule] 403." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

---

[48] At trial, the Court may permit Caskey to testify with respect to training standards, provided Caskey is able to remedy the deficiencies in his report regarding the reasoning and methodology behind his opinions.  The Court will determine after an objection at trial whether Caskey has provided sufficient reasoning to support his expert opinions on this subject.  The Court stresses, however, that the foundation currently provided by Caskey's report is wholly insufficient.

The Court is of the opinion that Caskey's conclusions on the issues described above should also be excluded on the basis of Rule 403.  The Supreme Court has indicated that "when law and science intersect, [a judge's "gatekeeper"] duties often must be exercised with special care."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 148 (1997) (Breyer, J., concurring).  In his report, Caskey not only offers his opinions on issues not fit for expert testimony; he also fails to support conclusions on which expert testimony could otherwise be useful with any form of reasoning or methodology. An expert's self-proclaimed accuracy is insufficient to prove that his opinions are reliable and useful to the jury.  *Black v. Food Lion, Inc.*, 171 F.3d 308, 311 (5th Cir. 1999).  The Court finds that admission of Caskey's opinions would not only be unhelpful, but would also be harmful to the trier of fact.  *See Askanase*, 130 F.3d at 673.  Indeed, the Court specifically finds that their probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.  Accordingly, Rule 403, as well as Rule 702, warrants the exclusion of Caskey's opinions.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Big Valley's motion to exclude testimony is **GRANTED IN PART AND DEFERRED UNTIL TRIAL IN PART**.  The motion to exclude testimony is **GRANTED** with respect to Caskey's opinions regarding the regulations applicable to the vessel, the vessel's unseaworthiness, the defendant's purported negligent conduct, and the factual and proximate causes of Shawler's alleged injury, as well as to any other legal opinions or conclusions Caskey purports to offer.  The motion is also **GRANTED** with respect to Caskey's opinions regarding the improper safety training of the crew and of the passengers and as to Caskey's opinion that the captain's alcohol consumption contributed to the accident.

The motion is **DEFERRED UNTIL TRIAL** with respect to whether Caskey's opinions regarding the regulations applicable to "uninspected vessels" will be admitted. Caskey will be permitted to offer such opinions, provided that they are relevant and that a proper foundation is laid. Any objections Big Valley has to such testimony may be re-urged at a trial.

**IT IS FURTHER ORDERED** that the legal opinions and conclusions offered by Big Valley's expert, which Big Valley indicated[49] were included in that expert's report only in the event the Court denied Big Valley's motion to exclude Caskey's corresponding opinions, are also **EXCLUDED**.

New Orleans, Louisiana, March 15, 2016.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[49] R. Doc. No. 43-1, at 2 n. 1.